UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X
                                              :

ALFONSO GARCIA RAMOS, JORGE    :
PEREZ AGUILAR, FELIX LUNA, and    :
GUILLERMO ALONSO MORALES,    :
Individually and on Behalf of Others Similarly :
Situated,                                   :
                                              :
                         Plaintiffs,   :
                                              :
             - against -              :
                                              :
                                              :
DNC FOOD SERVICE CORP. d/b/a    :
SPEEDY'S DELI, NIKOLAOS VASILATOS :
and SPIROS ZISIMATOS, Jointly and   :
Severally,                                  :
                                              :
                      Defendants. :
                                              :
--------------------------------------------------------X

| USDC SDNY |
| DOCUMENT |
| ELECTRONICALLY FILED |
| DOC #: _____ |
| DATE FILED: __6/1/2020__ |

19-cv-2967 (VSB)

**OPINION & ORDER**

<u>Appearances</u>:

Kibum Byun
John Troy
Troy Law, PLLC
Flushing, New York
*Counsel for Plaintiffs*

A Michael Weber
Eli Zev Freedberg
Huan Xiong
Kevin K. Yam
Maayan Deker
Littler Mendelson, P.C.
New York, New York
*Counsel for Defendants*

<u>VERNON S. BRODERICK</u>, United States District Judge:

       Plaintiffs Alfonso Garcia Ramos, Jorge Perez Aguilar, Felix Luna, and Guillermo Alonso

Morales (the "Named Plaintiffs") bring the instant action pursuant to the Fair Labor Standards

Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and New York Labor Law ("NYLL"), N.Y. Lab. Law § 650 *et seq.*, against Defendants DNC Food Service Corp. d/b/a Speedy's Deli, Nikolaos Vasilatos, and Spiros Zisimatos.  Before me is Named Plaintiffs' motion seeking an order:  (1) granting conditional certification of their FLSA claim as a collective action pursuant 29 U.S.C. § 216(b); (2) approving their notice and consent forms and ordering that the notice and consent be mailed to potential opt-in plaintiffs and posted in Speedy's Deli, and (3) directing Defendants to provide contact information for all potential opt-in plaintiffs in paper and digital format. Because I find that the Named Plaintiffs have met their modest burden of demonstrating that non-managerial staff at Speedy's Deli are similarly situated with respect to their overtime claim, but have not met their burden with respect to their minimum wage claim, the Named Plaintiffs' motion for conditional collective certification is GRANTED IN PART AND DENIED IN PART.

## I.     **Background**[1]

DNC Food Service Corp. is a New York corporation doing business as Speedy's Deli ("Speedy's Deli"), a delicatessen café located at 1271 Broadway, New York, NY 10001.  (*See* Compl. ¶¶ 1, 13.)[2]  The business is owned and operated by Spiros Zisimatos ("Zisimatos") and Nikolaos Vasilatos ("Vasilatos," and together with Zisimatos, the "Individual Defendants").  (*Id.* ¶¶ 15–16.)

The Named Plaintiffs are past employees of Speedy's Deli.  (*See* Garcia Decl. ¶ 1; Perez

---

[1] The facts in this section are recounted to provide background for this Opinion & Order, and are not intended to and should not be viewed as findings of fact.  They are based on the facts contained in the Named Plaintiffs' complaint as well as the memoranda of law and declarations filed by Named Plaintiffs and Defendants.

[2] "Compl." refers to the Named Plaintiffs' complaint, filed February 3, 2017.  (Doc. 1.)

Decl. ¶ 1; Luna Decl. ¶ 1; Alonso Decl. ¶ 1.)[3]  Alfonso Garcia Ramos ("Garcia") was employed

as a baker whose duties also included cleaning the kitchen, tables, and dishes used to make

bread.  He worked at Speedy's Deli from 1990 to 2017.  (Garcia Decl. ¶ 1.)  Jorge Perez Aguilar

("Perez") worked there from 1990 to 2018 as a cashier, counterman, and delivery employee.

(Perez Decl. ¶ 1.)  Felix Luna ("Luna") worked there from 1987 to 2014 as a counterman, food

prep cook, grill man, and delivery man.  (Luna Decl. ¶ 1.)  Guillermo Alonso Morales

("Alonso") worked there from 2006 to 2019 as a porter and grill man.  (Alonso Decl. ¶ 1.)

The Individual Defendants controlled the businesses and managed the employment of the Named

Plaintiffs.  (*See* Compl. ¶ 18.)  The Named Plaintiffs allege that they were not paid minimum

wage for all hours worked and that they regularly worked more than forty hours a week but did

not receive payment of overtime premiums.  (Compl. ¶¶ 45–74; Garcia Decl. ¶¶ 2, 5; Perez Decl.

¶¶ 2, 10; Luna Decl. ¶ 2, 4; Alonso Decl. ¶¶ 2–5, 7.)  They also allege that they were paid in

cash, did not receive pay stubs, did not receive wage notices or were pressured into signing

inaccurate wage notices, and did not receive adequate breaks; if they did receive a break, it was

for no more than ten or fifteen minutes.  (Compl. ¶¶ 45–74; Garcia Decl. ¶¶ 3, 6–7; Perez Decl.

¶¶ 4,6–8; Luna Decl. ¶ 3, 4; Alonso Decl. ¶¶ 6, 10–12.)

## II.   <u>Procedural History</u>

The Named Plaintiffs filed their complaint (the "Complaint") against Defendants for

violations of FLSA and the NYLL on April 3, 2019.  (Doc. 1.)  Defendants filed their answer on

May 30, 2019.  (Doc. 17.)  On June 10, 2019, the Named Plaintiffs submitted a letter requesting

---

[3] These declarations were all filed on July 19, 2019, as exhibits to the Declaration of Brent E. Pelton, ("Pelton Decl.," Doc. 25) in support of Plaintiff's motion.  "Garcia Decl." refers to the Declaration of Alfonso Garcia Ramos (Doc. 25-2).  "Perez Decl." refers to the Declaration of Jorge Perez Aguilar.  (Doc. 25-3).  "Luna Decl." refers to the Declaration of Felix Luna.  (Doc. 25-4.)  "Alonso Decl." refers to the Declaration of Guillermo Alonso Morales. (Doc. 25-5.)

an adjournment of all mediation-related deadlines because they wished to mediate only on a collective or class-wide basis, while Defendants were willing to mediate only on an individual basis.  (Doc. 18.)  The Named Plaintiffs requested that (i) the deadline to schedule the mediation be adjourned until sixty (60) days after the close of the collective action opt-in period, and (ii) that the deadlines relating to pre-mediation discovery and production be adjourned until thirty (30) days after the close of the opt-in period.  (*Id.*)  By endorsement dated June 11, 2019, I directed the parties to submit a proposed briefing schedule for their proposed motion for conditional certification of the collective action, and adjourned all mediation-related deadlines sine die.  (Doc. 19.)

On July 19, 2019, the Named Plaintiffs filed their motion to conditionally certify the class, along with a memorandum of law and declarations in support of the motion.  (Docs. 23–25.)  On August 19, 2019, Defendants filed their memorandum of law and declaration in opposition to the motion.  (Docs. 26–27.)  The Named Plaintiffs filed their reply memorandum on August 27, 2019.  (Doc. 28.)

### III.  <u>Legal Standard</u>

Under the FLSA, employees may pursue collective actions to recover unpaid wages where the employees are "similarly situated" and give consent to become a party in a writing filed with the court.  *See* 29 U.S.C. § 216(b).  A district court may implement § 216(b) by "facilitating notice to potential plaintiffs of the pendency of the action and of their opportunity to opt-in as represented plaintiffs."  *Myers v. Hertz Corp.*, 624 F.3d 537, 554 (2d Cir. 2010) (internal quotation marks omitted).  The court may also direct a defendant employer to disclose the names and addresses of potential class members.  *See Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 169–70 (1989).

In the Second Circuit there is a two-step certification process for FLSA opt-in collective actions. *Myers*, 624 F.3d at 554–55. At the first stage, the district court must make "an initial determination to send notice to potential opt-in plaintiffs who may be 'similarly situated' to the named plaintiffs with respect to whether a FLSA violation has occurred." *Id.* at 555. In order to achieve conditional certification, plaintiffs must make only a "'modest factual showing' that they and potential opt-in plaintiffs 'together were victims of a common policy or plan that violated the law.'" *Id.* (quoting *Hoffmann v. Sbarro, Inc.*, 982 F. Supp. 249, 261 (S.D.N.Y. 1997)). "The key element of that showing is a shared unlawful policy; that is, while the proposed collective need not be identical in every possible respect, its potential members must be similarly situated with respect to the allegedly unlawful policy or practice." *Korenblum v. Citigroup, Inc.*, 195 F. Supp. 3d 475, 479 (S.D.N.Y. 2016) (internal quotation marks omitted). "Plaintiffs may satisfy this requirement by relying on their own pleadings, affidavits, declarations, or the affidavits and declarations of other potential class members." *Hallissey v. Am. Online, Inc.*, No. 99-CIV-3785 (KTD), 2008 WL 465112, at *1 (S.D.N.Y. Feb. 19, 2008). Although "[u]nsupported assertions" are not sufficient to certify a collective action, the Second Circuit has emphasized that the standard of proof at this initial stage should remain "low" because "the purpose of this . . . stage is merely to determine *whether* 'similarly situated' plaintiffs do in fact exist." *Myers*, 624 F.3d at 555. The court "does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations" at this stage. *Bhumithanarn v. 22 Noodle Mkt. Corp.*, No. 14-cv-2625 (RJS), 2015 WL 4240985, at *3 (S.D.N.Y. July 13, 2015) (quoting *Lynch*, 491 F. Supp. 2d at 368). The court may, however, "evaluate the sufficiency of plaintiffs' pleadings." *Trinidad v. Pret A Manger (USA) Ltd.*, 962 F. Supp. 2d 545, 556 (S.D.N.Y. 2013). As Judge Paul A. Engelmayer observed in *Trinidad*, "[t]he court's discretionary power to

facilitate the sending of notice to potential class members is premised on its use as a tool for

efficient case management, *Hoffmann–La Roche* [], 493 U.S. [at 174]; *Myers* [], 624 F.3d [at 555

n.10], and it does not promote efficient case management to facilitate notice to potential class

members where the representative plaintiffs have failed to state plausible FLSA violations . . . .

[i]t makes little sense to certify a collective action based on manifestly deficient pleadings." *Id.*;

*see also Gjurovich v. Emmanuel's Marketplace, Inc.*, 282 F. Supp. 2d 101, 105 (S.D.N.Y. 2003)

("Once the Plaintiff makes a colorable claim for relief, the only inquiry necessary is whether the

potential plaintiffs to be notified are similarly situated to the named plaintiff.").

If the court finds that the plaintiffs have satisfied their burden, it may exercise its

discretionary power to conditionally certify the collective action and facilitate notice to the

potential class members. *See Guillen v. Marshalls of MA, Inc.*, 750 F. Supp. 2d 469, 475

(S.D.N.Y. 2010).

After completing discovery, a defendant may move to challenge certification, initiating

the second stage of conditional certification. *See Myers*, 624 F.3d at 555. At this stage, "the

district court will, on a fuller record, determine whether a so-called 'collective action' may go

forward by determining whether the plaintiffs who have opted in are in fact 'similarly situated'

to the named plaintiffs," and "[t]he action may be 'de-certified' if the record reveals that they are

not, and the opt-in plaintiffs' claims may be dismissed without prejudice." *Id.*; *see also Viriri v.

White Plains Hospital Med. Ctr.*, 320 F.R.D. 344, 348 (S.D.N.Y. 2017) ("After discovery is

completed, if it appears that some or all members of a conditionally certified class are not

similarly situated, a defendant may move to challenge certification, at which point a court will

conduct a more searching factual inquiry as to whether the class members are truly similarly

situated." (internal quotation marks omitted)).

IV.   **Discussion**

A.   ***Conditional Certification***

The Named Plaintiffs move for conditional certification of a collective consisting of all "non-management employees who worked at Speedy's Deli at any time on or after April 3, 2013." (Pls.' Mem. 1.)[4]  According to Plaintiffs, Defendants violated their rights and the rights of all non-management employees under the FLSA by failing to pay the minimum wage for all hours worked and overtime premiums for work performed in excess of forty (40) hours per week.  (*Id.* at 2.)

Defendants argue that the Named Plaintiffs' motion should be denied because the Named Plaintiffs are not similarly situated to other non-management employees of Defendants.  (Defs.' Opp. 1.)[5]  In the alternative, they contend the Court should limit the collective to current or former employees employed in the same positions as the Named Plaintiffs, namely cashiers, bakers, grillmen, countermen, and food preparers.  (*Id.*)  Defendants also argue that any collective approved should only include employees who were employed at Speedy's Deli three years prior to the date the Complaint was filed, April 3, 2019.

After reviewing the Complaint and each of the declarations submitted by the Named Plaintiffs, I find that the Named Plaintiffs have carried their "modest" burden with respect to certification of a collective of non-management employees on their overtime claim, but not on their minimum wage claim.

---

[4] "Pls.' Mem." refers to the Named Plaintiffs' Memorandum of Law in Support of Plaintiffs' Motion to Conditionally Certify a Fair Labor Standards Act Collective Action and Authorize Notice to be Issued to All Persons Similarly Situated, filed on July 19, 2019.  (Doc. 24.)

[5] "Defs.' Opp." refers to the Defendants' Memorandum in Opposition to Plaintiffs' Motion to Conditionally Certify a Fair Labor Standards Act Collective Action and Authorize Notice to be Issued to All Persons Similarly Situated, filed on August19, 2019.  (Doc. 27.)

### 1. Statute of Limitations

Under the FLSA, plaintiffs are generally afforded two years to file a claim from the time the cause of action accrued unless the violation is "willful," in which case plaintiffs are afforded three years. *See* 29 U.S.C. § 255(a); *see also Hamadou v. Hess Corp.*, 915 F. Supp. 2d 651, 668 (S.D.N.Y. 2013). A FLSA cause of action "accrues on the next regular payday following the work period when services are rendered." *Fakir v. Skyrise Rock Corp.*, No. 16-CV-4695 (JPO), 2016 WL 7192095, at *3 (S.D.N.Y. Dec. 12, 2016) (quoting *Nakahata v. N.Y.-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 198 (2d Cir. 2013 (citing 29 C.F.R. § 790.21(b)))). The statute of limitations for New York Labor Law claims is six years. NYLL § 663(3).

The Named Plaintiffs allege the Defendants' violations were willful, (*see* Compl. ¶¶ 86, 90), and Defendants do not argue that the two year statute of limitations should apply. (*See* Defs.' Opp. 6 ("Plaintiffs are entitled to send Notice to only those putative collective members employed . . . at Speedy's Deli going back three (3) years back from the date the underlying complaint was filed. . . .").) Because the Complaint in this case was filed on April 3, 2019, plaintiffs in this case may assert only claims that arose after April 3, 2016.

This means that the FLSA claims of Named Plaintiff Felix Luna may be time-barred in their entirety, because he claims that he worked at Speedy's Deli from 1987 to around July 2014. Still, "[his] sworn statements are nonetheless instructive regarding the history of Defendants' compensation practices at" Speedy's Deli, *Liping Dai v. Lychee House, Inc.*, No. 17CV6197 (DF), 2018 WL 4360772, at *9 (S.D.N.Y. Aug. 29, 2018), although they may "carry less weight than those whose claims are not-time-barred," *Cohan v. Columbia Sussex Mgmt., LLC*, No. CV 12-3203 JS AKT, 2013 WL 8367807, at *5 (E.D.N.Y. Sept. 19, 2013), *aff'd*, No. 12-CV-3203(JS)(AKT), 2016 WL 1045532 (E.D.N.Y. Mar. 15, 2016). *See also Flood v. Carlson*

*Restaurants Inc.*, No. 14 CIV. 2740 AT, 2015 WL 260436, at *2 (S.D.N.Y. Jan. 20, 2015) (even though one named plaintiff's claims arose outside of the FLSA statute of limitations, his "affidavit [was] still relevant at this stage of the inquiry because it makes similar allegations and supports Plaintiffs' claim of a common policy at T.G.I. Friday's to violate the FLSA"); *Rosario v. Valentine Ave. Disc. Store, Co.*, 828 F. Supp. 2d 508, 516 (E.D.N.Y. 2011) (finding that "[a]ffidavits of workers whose employment falls outside the statutory period are probative of employer's wage and hour practices and they may corroborate the claims of more recent violations" (internal quotation marks omitted)).

### 2.  Overtime Claim

The FLSA requires that "for a workweek longer than forty hours," an employee working "in excess of" forty hours shall be compensated for those excess hours "at a rate not less than one and one-half times the regular rate at which [she or] he is employed."  29 U.S.C. § 207(a)(1). "[I]n order to state a plausible FLSA overtime claim, a plaintiff must sufficiently allege 40 hours of work in a given workweek as well as some uncompensated time in excess of the 40 hours." *Dejesus v. HF Mgmt. Servs., LLC*, 726 F.3d 85, 88 (2d Cir. 2013) (internal quotation marks omitted).

The Complaint and the Named Plaintiffs' declarations contain allegations supporting the notion that they and a wide variety of employees of Speedy's Deli regularly worked over forty hours a week, but were not paid the overtime premiums to which they were entitled under the FLSA.  First, although the Named Plaintiffs worked in different positions and were paid in different ways—Garcia at a flat rate and Alonso and Perez at an hourly rate, (Garcia Decl. ¶ 4; Perez Decl. ¶¶ 3–4; Alonso Decl. ¶ 7)—they all allege that they always worked well over forty hours a week as a matter of course, but were never paid overtime premiums.  (Garcia Decl. ¶¶ 2,

5; Perez Decl. ¶¶ 2, 10; Alonso Decl. ¶¶ 2–5, 7.)  All provide factual detail to support these claims, including the number of days they typically worked each week and their start and end times for each day, as well as how those schedules changed throughout their employment. (Garcia Decl. ¶¶ 2, 5; Perez Decl. ¶¶ 2, 10; Alonso Decl. ¶¶ 2–5, 7.)  Perez and Alonso also state that there was no method of tracking their time worked until a time scanner was installed in 2018,[6] (Perez Decl. ¶ 5; Alonso Decl. ¶ 10), and all three report that they were paid in cash and never received pay stubs, (Garcia Decl. ¶ 6; Perez Decl. ¶¶ 6–7; Alonso Decl. ¶¶ 10–11).  Luna's declaration contains the same allegations.  (Luna Decl. ¶ 2–6, 9–10.)

The Named Plaintiffs' statements about other employees are somewhat conclusory and difficult to parse, but not fatally so.  All state that it was Defendants' "corporate policy" to not pay overtime, that this policy was in place throughout their employment at Speedy's Deli, and that it was "common knowledge" that Defendants did not pay overtime.  (Garcia Decl. ¶ 11; Perez Decl. ¶ 14, Alonso Decl. ¶ 16.)

Further, Garcia, a bread maker and porter, states that he learned that "Defendants' practice of failing to pay overtime was a corporate policy that applied to all of the employees at the deli" by "observ[ing] Felipe, who worked as an assistant cook, and Antonio, who worked as a cook."  (Garcia Decl. ¶ 9.)  Without more, I am at a loss to understand how Garcia might have "observed" a failure to pay overtime; however, he certainly could have observed these employees working in excess of forty hours a week.  Garcia provides more detail in the next paragraph, stating that he observed and spoke with "Rambo," a counter attendant, with whom he discussed the fact that they did not receive overtime, as well as the fact that it was Defendants' practice not to pay overtime.  (*Id.* ¶ 10.)  He also states that for the entirety of his employment,

---

[6] I infer from the fact that Garcia was paid a flat rate that he also did not record his time.

"Defendants failed to pay overtime premiums to employees in the front-of-the-house and the back-of-the-house, both for employees who paid salary and those who were paid hourly."  (*Id.* ¶ 11.)

Perez, a cashier, counterman, and deliveryman, states that he learned about Defendants' policy through "conversations with other employees" and observation of "'Martin' (sandwich preparer), 'Alonso' (salad man and grill man), 'Alejandro' (sandwich man and phone orders), 'Miguel' (salad man), 'Jose Antonio' (cook), 'Maria Matilda' (cashier and phone orders)." (Perez Decl. ¶¶ 1, 12.)  Perez does not specify what he observed the listed individuals doing or saying, (*id.*), but goes on to state that he spoke with "employees . . . 'Martin,' 'Felix,' 'Guillermo,'" whose job positions are unspecified, about the fact that they were "not paid overtime but instead were paid straight-time rates for all hours worked, particularly before 2018," (*id.* ¶ 13.)

Alonso, a porter and grill man who was paid a flat rate early on in his employment and later was paid hourly, states that he discussed "Defendants' practice of failing to pay overtime to all of their employees until March or April 2018" with his co-Plaintiffs and another employee called "Roberto," who worked as a cook.  (Alonso Decl. ¶ 14–15.)

Luna, a counterman, prep cook, grill man, and delivery employee, corroborates the personal experiences of Garcia, Perez, and Alonso, stating with specificity that he experienced similar policies throughout his employment, and that he observed that certain individuals worked in excess of forty hours a week—"Felipe," a food preparer, "Pedro," a delivery employee, "Antonio," a cook, and "Raul," a salad maker—and that he discussed with them "the fact that we did not receive overtime but instead were paid at straight-time rates for all hours worked."  (Luna Decl. ¶ 11.)

I find Perez's allegations to be too vague to be probative of whether the employees he mentions are similarly situated to him because:  (1) for those employees he spoke with about Defendants' failure to pay overtime, he does not provide their job title; and (2) for those employees whose job title he provides, he does not offer any allegations to suggest they told him they were not paid overtime premiums.  Garcia's allegations about "Felipe," the assistant cook, and Antonio, the cook, are also too vague for the same reasons.

However, Garcia's remaining allegation about his conversations with Rambo, the counter attendant, as well as the allegations of Alonso and Luna about their own personal experiences and conversations with other specifically identified employees, are sufficient to suggest that a range of employees—including front-of-house employees such as cashiers, countermen, deliverymen, salad makers, grillmen, and porters; and back-of-house employees like bread makers, food prep cooks, and cooks; in other words, every conceivable type of employee of a delicatessen[7]—were subject to a blanket policy by Defendants of not paying overtime.  Based on these allegations, in conjunction with the allegations by the Named Plaintiffs that (1) they were subject to this policy throughout their employment despite occupying different positions at various times, (2) employees were subject to this policy regardless of whether they were paid a flat rate or on an hourly basis, (3) Defendants did not have a method of tracking their employees' time until 2018, suggesting they did not have a means of calculating overtime for anyone, I find it reasonable to infer that the blanket policy also extended to all non-management employees. *See Islam v. LX Ave. Bagels, Inc.*, No. 18 Civ. 04895 (RA) (RWL), 2019 WL 5198667, at *6 (S.D.N.Y. Sept. 30, 2019) (certifying collective that included employees who held different

---

[7] Indeed, Defendants do not identify any other categories of employees who work for them, let alone other categories of employees who they allege did not work overtime or who were paid a premium for any time worked in excess of 40 hours

positions from the named plaintiffs where the named plaintiffs themselves had held numerous other positions, which were "mirrored by the positions held variously by the other employees identified . . . as having been subject to the same compensation policies"); *Mendoza v. Ashiya Sushi 5, Inc.*, No. 12 Civ. 8629 (KPF), 2013 WL 5211839, at *3–5 (S.D.N.Y. Sept. 16, 2013) (granting conditional certification on overtime claim  with respect to all employees of sushi restaurant based on affidavit of plaintiff, who was a food preparer and dishwasher and "aver[red] that his observations and conversations" revealed other employees who did not receive overtime); *Iglesias-Mendoza v. La Belle Farm, Inc.*, 239 F.R.D. 363, 368 (S.D.N.Y. 2007) (granting conditional certification with respect to all employees of poultry farms based on affidavits of duck feeders and one butcher because "they were subjected to certain wage and hour practices at the defendants' workplace and to the best of their knowledge, and on the basis of their observations, their experience was shared by members of the proposed" collective).

The instant case is distinguishable from cases where courts have limited the certified collective to those employees specifically mentioned in the named plaintiffs' affidavits because the Named Plaintiffs here point to a greater variety of employees, in both front and back of the house, that shared their experiences, and there is no suggestion that Defendants employed any other categories of employees.  *Compare to, e.g., Liping Dai*, 2018 WL 4360772, at *10 (in action against restaurant, limiting collective where plaintiffs only offered allegations about food preparers, dishwashers, delivery workers, and oil woks); *Yap* (in action against restaurant, limiting collective to deliverymen and chefs because defendants also employed waitstaff, bussers and others yet plaintiffs offered no allegations about them); *cf. Valerio v. RNC Indus., LLC*, 314 F.R.D. 61, 71 (E.D.N.Y. 2016) (certifying collective of laborers for construction company, where plaintiffs were laborers but sought certification of all non-managerial employees, because

it was likely that company employed non-managerial workers who were not laborers, such as clerical workers).

I am not persuaded by Defendants' cursory arguments in opposition that the employees of Speedy's Deli cannot be similarly situated because they performed different job duties.  (*See* Defs.' Opp. 5.)  In the Second Circuit, courts routinely find employees similarly situated "despite not occupying the same positions or performing the same job functions and in the same locations, provided that they are subject to a common unlawful policy or practice." *Balverde v. Lunella Ristorante, Inc.*, No. 15 Civ. 5518 (ER), 2016 WL 2757430, at *4 (S.D.N.Y. May 11, 2016) (quoting *Guaman v. 5 M Corp.*, No. 13 Civ. 03820 (LGS), 2013 WL 5745905, at *4 (S.D.N.Y. Oct. 23, 2013)).  Here, the purported differences between employees identified by Defendants do not affect the applicability of the allegedly unlawful scheme that Plaintiffs have identified; therefore, the differences are not a bar to preliminary certification.

I also reject Defendants' contention that the Named Plaintiffs have failed to demonstrate that there exist similarly situated employees because they have not provided the last names, job position, wage, or salary of the employees they spoke with.  (*See* Defs.' Opp. 4–5.)  As discussed, the Named Plaintiffs did, for the most part, set forth the job position of the employees they spoke with, and the remaining information is irrelevant to the question of whether the employees were subject to a common unlawful policy.  *See Rojas v. Kalesmeno Corp.*, No. 17 CIV. 0164 (JCF), 2017 WL 3085340, at *4 (S.D.N.Y. July 19, 2017) (finding last names not necessary for conditional certification; "the fact that the plaintiffs do not have complete information for their co-workers is precisely why they are requesting that the defendants produce this data").

Finally, Defendants argue that Plaintiff's "allegations that they were not properly paid . . .

[are] premature at best" because Defendants have proper time and pay records for the Named

Plaintiffs.  (Defs.' Opp. 4; Zisimatos Decl. ¶¶ 5, 6.)[8]  I fail to see how it could be "premature" for

a plaintiff to make allegations.  In any event, at the conditional certification stage, I "do[] not

resolve factual disputes."  *Bhumithanarn*, 2015 WL 4240985, at *3 (internal quotation marks

omitted).

### 3.  Minimum Wage Claim

However, Plaintiffs have not met their burden with respect to the minimum wage claim

because their own submissions do not sufficiently allege that any subset of employees was

subject to a common plan or policy that violated the relevant law.

The FLSA requires employers to pay employees at least the federal minimum wage for

every hour worked, 29 U.S.C. § 206, or the state minimum wage, if it is greater than the

federal minimum wage.  29 U.S.C. § 218(a).  In New York, the minimum wage has been

increasing yearly over the course of the time period covered by the complaint.  *See* NYLL §

652(1).  Relevant to this action are the following minimum wage rates:  $9 beginning December

31, 2015; $11 per hour beginning December 31, 2016; $13 per hour beginning December 31,

2017; and $15 per hour beginning December 31, 2018.  *Id.*  Under the FLSA, "[t]he

regular hourly rate of pay of an employee is determined by dividing his total remuneration for

employment . . . in any workweek by the total number of hours actually worked by him in that

workweek for which such compensation was paid."  *Copper v. Cavalry Staffing, LLC*, 132 F.

Supp. 3d 460, 466 (E.D.N.Y. 2015) (quoting 29 C.F.R. § 778.109).

Here, although the complaint alleges in a conclusory fashion that all Named Plaintiffs

were "not paid the minimum wage rate for all hours worked," the accompanying factual

---

[8] "Zisimatos Decl." refers to the Declaration of Spiros Zisimatos, filed on August 19, 2019.  (Doc. 26.)

averments contradict that claim.  Garcia—who, incidentally, does not assert in his declaration that he or any other employee was not paid minimum wage—states that throughout his employment, he worked 42 to 48 hours a week, and that from January 2015 through the end of his employment in December 2017, he was paid a flat rate of $700 per week.  (Garcia Decl. ¶¶ 2, 4.)  This amounts to an hourly pay rate somewhere between $14.58 and $16.67 per week, well above the minimum wage in effect at all relevant times.  Perez states that until January 2018, he was paid $9 per hour—below the applicable minimum wage—and from January 2018 to October 2018, he was paid $13 per hour, *i.e*., at minimum wage.  (Perez Decl. ¶¶ 2–3.)  Alonso states that from spring 2014 through spring 2018, he was paid $11 per hour, and from spring 2018 through the end of his employment in January 2019, he was paid $13 per hour, (Alonso Decl. ¶¶ 7); in other words, he was sometimes paid at or above minimum wage, and sometimes was not.

Perez also makes allegations about relevant conversations with other employees.  Perez, who was a cashier, counterman, and deliveryman, alleges that "Defendants' practice of failing to pay minimum wage for all hours worked" was a "corporate polic[y]," and that he learned this through the same "conversations" and "observ[ations]" detailed above.  (Perez Decl. ¶¶ 1, 12.)  Neither Garcia nor Alonso make any statements about Defendants having a policy of not paying minimum wage, nor any statements about speaking to other employees who were not paid minimum wage.  (*See generally* Garcia Decl.; Alonso Decl.)  Although Luna's declaration, as discussed above, is more factually detailed than the other Named Plaintiffs' declarations, his allegations about conversations with specific employees only relate to the nonpayment of overtime, not minimum wage.

Thus, the Named Plaintiffs' declarations do not establish that they were the victims of a common unlawful policy by Defendants to deny employees minimum wage, much less that all of

the non-management employees were also subject to such an unlawful policy.  *See Cruz v. Ham N Eggery Inc.*, No. CV 2015-3228 (JBW)(MDG), 2016 WL 4186967, at *4 (E.D.N.Y. Aug. 8, 2016) (denying motion for conditional certification of minimum wage claim where one named plaintiff was paid above minimum wage, the other named plaintiff did not clearly state that he was paid less than minimum wage, and one potential collective member was also paid above minimum wage; and stating that "[i]n order to bring a collective action, plaintiff must first show that she, herself, was subject to a FLSA violation" (citing *Kim v. 511 E. 5th Street, LLC*, 985 F. Supp. 2d 439, 447 (S.D.N.Y. 2013))); *Sanchez v. Gansevoort Mgmt. Group, Inc.*, 2013 WL 208909, at *2 (S.D.N.Y. 2013) (granting conditional certification for overtime claims but denying as to minimum wage claims); *Guan Ming Lin v. Benihana Nat'l Corp.*, 755 F. Supp. 2d 504, 510 (S.D.N.Y. 2010) (denying collective certification on minimum wage claim where only one of three named plaintiffs alleged he was paid less than minimum wage; general allegation was contradicted by specific pay alleged; and plaintiff's statements about other employees who he "observed" were paid below minimum wage were "too conclusory to establish the requisite factual nexus with other members of the putative collective action").

Nor would it be proper to conditionally certify a smaller subset of employees on this claim.  "To justify including different categories of workers in an FLSA collective, a 'modest but *job-specific* factual showing' is required."  *Jian Wu v. Sushi Nomado of Manhattan, Inc.*, No. 17cv04661 (PGG) (DF), 2019 WL 3759126, at *10 (S.D.N.Y. July 25, 2019 (quoting *Yap v. Mooncake Foods, Inc.*, 146 F. Supp. 3d 552, 565 (S.D.N.Y. 2015)).  Here, Perez's statements about his conversations with other employees lack any detail about what positions those other employees held that would enable me to define the scope of a potential collective.  *Lianhua Weng v. Kung Fu Little Steamed Buns Ramen Inc.*, 17 civ. 273 (LAP), 2018 WL 1737726, at *3

(S.D.N.Y. Mar. 26, 2018) ("Despite speaking with 'various other employees,' Plaintiffs' factual allegations are void of the detail required to show that employees in other positions are similarly situated."); *Morales v. Plantworks, Inc.*, No. 05 Civ. 2349(DC), 2006 WL 278154, at *3 (S.D.N.Y. Feb. 2, 2006) ("[P]laintiffs have offered only a conclusory allegation in their complaint; they have offered nothing of evidentiary value.").

      **B.**    *Notice and Consent Form*

At the conditional certification stage, the district court monitors both the drafting and the distribution of the Notice of Pendency to ensure timeliness and correctness, and courts have "broad discretion" over the details of the Notice. *Gjurovich v. Emmanuel's Marketplace, Inc.*, 282 F. Supp. 2d 101, 106 (S.D.N.Y. 2003); *see also Hoffmann-La Roche*, 493 U.S. at 170 (declining to examine the terms of a notice pursuant to § 216(b) based on the trial court's broad discretion).

Defendants oppose Named Plaintiffs' proposed Notice of Pendency for several reasons, including (1) the proposed notice period is overbroad; (2) the Notice's use of larger font and bold typeface for certain phrases is confusing; (3) the Notice's heading—"Notice of Pendency with Opportunity to Join"—is "too harsh and screams potential windfall"; (4) several additional provisions should be added; (5) the paragraph entitled "Immigration Status" should be stricken; and (6) the Named Plaintiffs' request to post the notice in Speedy's Deli is unnecessary. (Defs.' Opp. 6–8.)

Because the Notice will need to be narrowed based on my findings in the instant Opinion & Order, including narrowing the scope of the Notice based on my determination that conditional certification is only warranted with respect to the overtime claim, I direct the parties to meet and confer on a revised proposed Notice. I do not address the substance of the Notice at

this time.  Defendants are advised that in light of their failure to provide any authority supporting their objections to the content of the Notice—and the wealth of authority supporting the Named Plaintiffs' proposed language, (*see* Pls.' Reply 8–9)[9]—it is unlikely that I will ultimately order any Notice to be revised in accordance with their requests unless I am presented with convincing legal authority if the parties are unable to reach agreement through the meet and confer process.

However, in order to streamline the meet and confer process, I address two of Defendants' objections that do not relate to the wording of the notice:  the time period of the notice, and the method of posting any notice.

### 1.   Time Period of Notice

The Named Plaintiffs propose sending notice to all employees in the putative collective who worked at Speedy's Deli from April 3, 2013 through the date of an Opinion & Order granting collective certification because the New York Labor Law statute of limitations is six years, and some of the FLSA plaintiffs may have their own New York Labor Law claims.  (Pls.' Mem. 11.)  The Named Plaintiffs argue that sending notice dating back six years therefore promotes judicial economy and may facilitate class certification at a later stage.  (*Id.*; Pls.' Reply 9.)  Defendants contend notice should only be sent to employees who employed from April 3, 2016 to the date the Complaint was filed.  (Defs.' Opp. 6.)

Although only the FLSA, and not the NYLL, authorizes collective actions, some courts in this Circuit have, for purposes of efficiency, approved six-year notice periods in order to identify "plaintiffs with FLSA claims who may also have NYLL claims subject to [the] six-year statute of limitations."  *Ramos v. Platt*, No. 1:13-CV-8957-GHW, 2014 WL 3639194, at *4 (S.D.N.Y.

---

[9] "Pls.' Reply" refers to Plaintiffs' Reply Memorandum of Law Support of Plaintiffs' Motion to Conditionally Certify a Fair Labor Standards Act Collective Action and Authorize Notice to be Issued to All Persons Similarly Situated, filed on August 27, 2019.  (Doc. 28.)

July 23, 2014); *see also Fernandez v. Catholic Guardian Servs.*, No. 17 CIV. 03161 (ER), 2018 WL 4519204, at *4 (S.D.N.Y. Sept. 20, 2018) (citing *Winfield v. Citibank, N.A.*, 843 F. Supp. 2d 397, 410–11 (S.D.N.Y. 2012)).

"A more recent trend, however, is to approve three-year notice periods to avoid 'the confusion caused by notifying plaintiffs who potentially have two disparate claims with different statutes of limitations, along with the inefficiency of providing notice to plaintiffs whose claims may well be time-barred.'"  *Sanchez v. El Rancho Sports Bar Corp.*, No. 13 CIV. 5119 RA, 2014 WL 1998236, at *4 (S.D.N.Y. May 13, 2014) (quoting *Trinidad*, 962 F. Supp. 2d at 564). Accordingly, "[b]ecause Plaintiffs have not moved for class certification of their NYLL claims under Federal Rule of Civil Procedure 23 and because [] employees who have only state-law claims are not eligible to join this collective action," I conclude that a three-year notice period is appropriate.  *Id.*; *see also Contrera v. Langer*, 278 F. Supp. 3d 702, 722 (S.D.N.Y. 2017) ("In the present case, we believe that the three-year period more effectively serves the goal of efficiency and will avoid confusing individuals whose claims arise only under the NYLL."  (internal quotation marks omitted); *Fernandez*, 2018 WL 4519204.

The Named Plaintiffs do not address Defendants' request that the notice be limited to employees who worked at Speedy's Deli in the three years prior to the Complaint, rather than including employees who have worked at Speedy's Deli from the filing of the Complaint to the present.  (*See generally* Pls.' Reply.)  However, Defendants' opposition does not clearly set forth this objection nor have they provided any argumentation or supporting authority in support of their requested limitation.  (*See* Defs.' Opp. 6.)

Typically, in a FLSA collective action, "the statute of limitations for each plaintiff runs when he or she files written consent with the court electing to join the lawsuit, not when the

named plaintiff files the complaint." *McGlone v. Contract Callers, Inc.*, 867 F. Supp. 2d 438, 445 (S.D.N.Y. 2012) (citing 29 U.S.C. § 256(b)).  "However, courts have discretion to equitably toll the limitations period in appropriate cases in order to avoid inequitable circumstances." *Id.*  "To apply equitable tolling, the Court must find that a plaintiff has satisfied two strict conditions:  (1) that extraordinary circumstances prevented the plaintiff from timely filing his or her claim, and (2) that the plaintiff pursued his or her claim with reasonable diligence during the requested period." *Alvarado v. Villas Mkt. Place Inc.*, No. 19-CV-4036 (VEC), 2020 WL 91489, at *3 (S.D.N.Y. Jan. 8, 2020).  "[T]he delay caused by the time required for a court to rule on a motion, such as one for certification of a collective action in a FLSA case, may be deemed an extraordinary circumstance justifying application of the equitable tolling doctrine." *Id.*  (internal quotation marks omitted); *Sushi Nomado of Manhattan, Inc.*, 2019 WL 3759126, at *11 (collecting cases where courts have tolled the statute of limitations for the claims of potential opt-in plaintiffs for the period of time that a motion for conditional certification has been pending).

Because this motion has been pending for several months, I conclude that equitable tolling through at least until the date of this Opinion & Order is appropriate, and may be appropriate through the date of issuance of the Notice, provided that the Named Plaintiffs pursue their claims with "reasonable diligence." *Alvarado*, 2020 WL 91489.  Because I have not yet approved a Notice and so it cannot yet be distributed and I cannot assess the parties' diligence, I will not set an end date of the notice period at this time.[10]  The parties shall meet and confer on this issue and if they cannot agree, set forth their positions in their letter accompanying their revised proposed Notice or Notices.

---

[10] The current national health crisis may further present "extraordinary circumstances" that warrant equitable tolling.

2.   *Distribution of Notice*

Defendants also oppose the Named Plaintiffs' proposal for the notice to be mailed and physically posted at Speedy's Deli, because public posting will be redundant and may disrupt Defendants' relationships with vendors and suppliers.  (Defs.' Opp. 9).

"Courts routinely approve requests to post notice on employee bulletin boards and in other common areas, even where potential members will also be notified by mail." *Whitehorn v. Wolfgang's Steakhouse, Inc.*, 767 F. Supp. 2d 445, 449 (S.D.N.Y. 2011).  "[P]osting notice in the workplace maximizes potential plaintiffs' opportunities to be informed of the pendency of the litigation and consider whether to opt in." *Bittencourt v. Ferrara Bakery & Cafe Inc.*, 310 F.R.D. 106, 118 (S.D.N.Y. 2015) (internal quotation marks omitted).  This rationale is especially important here, where Defendants' counsel states that Defendants do not have e-mail addresses and telephone numbers for all potential collective members.  (Defs.' Opp. 9.)  Accordingly, any Notice that is ultimately approved shall be both mailed and posted by the Defendants.

Accordingly, the parties shall submit a revised Notice, as well as a joint letter updating me as to the parties' discussions, within thirty (30) days of this order.  To the extent that the parties are unable to agree on the content and means of dissemination, the letter shall identify the specific items upon which the parties could not agree so I can rule on such issues.  *See Kew Sing Yap*, 146 F. Supp. 3d at 568 ("Plaintiffs and Defendants are hereby ordered to meet and confer on a newly-revised notice that incorporates the Court's rulings above.").

C.  *Contact Information*

The Named Plaintiffs request that Defendants provide, in "electronically readable format," the names, last known addresses, e-mail addresses, and telephone numbers (including cell phone numbers), of all members of the collective.  (*See* Pls.' Mem. 1.)  Defendants oppose

the request on the grounds that (1) they do not have e-mail addresses and telephone numbers of all employees, and telephone numbers are unnecessary; and (2) that they lack the ability to produce the information in electronic format because they are "not computer savvy."  (Defs.' Opp. 7, 9.)

Because courts typically allow turnover of contact information to "effectuate the FLSA's remedial purpose," I grant Named Plaintiffs' request for contact information with respect to the collective defined in the instant Opinion & Order—all non-management employees employed from April 3, 2016 to the present.  *Lianhua Weng*, 2018 WL 1737726, at *5; s*ee also Costello v. Kohl's Ill., Inc.*, No. 1:13-CV-1359-GHW, 2014 WL 4377931, at *8 (S.D.N.Y. Sept. 4, 2014) (finding that "courts routinely approve" requests that defendants produce an electronic list including names, addresses, telephone numbers, dates of employment, locations of employment, and e-mail addresses of potential plaintiffs once conditional certification has been granted). Defendants must produce all the contact information requested by Plaintiffs that can be extracted from their records, but are not required to produce information they do not have.  However, I grant the Named Plaintiffs' request for the information to be produced in electronic format. Defendants have provided no authority or factual detail supporting their request; indeed, Defendants' declarant, Zisimatos, does not even state that he is not "computer savvy," as counsel represents, only stating that producing the information electronically would be "onerous and difficult to coordinate since I don't keep electronic records."  (Zisimatos Decl. ¶ 8.)  In any event, I find that creating an Excel spreadsheet from hard copy documents is not too onerous, and counsel can assist with collecting this information from Defendant's documents and organizing it into a spreadsheet or table.

Accordingly, I conclude production of the contact information in an electronic format

"will not be overly burdensome to Defendants even if they do not currently have the information in an electronic format." *Robles v. Liberty Rest. Supply, Corp.*, No. 12-CV-5021 FB VMS, 2013 WL 6684954, at *13 (E.D.N.Y. Dec. 18, 2013).

**V.**     **Conclusion**

Because I find that conditional certification on the Named Plaintiffs' overtime claim, but not their minimum wage claim, is warranted with respect to all non-management employees of Speedy's Deli, Plaintiffs' motion for conditional certification is GRANTED IN PART AND DENIED IN PART.  I hereby (1) conditionally certify a class of non-management employees employed by Speedy's Deli from April 3, 2016 to the present, although that date may be extended if further equitable tolling is warranted; (2) order Defendants to produce in electronic form all the names, last known addresses, e-mail addresses, and telephone numbers, including cell phone numbers, of employees in the conditionally certified collective, to the extent such information is contained in Defendants' records; and (3) direct the parties to meet and confer with respect to the content of the proposed Notice of Pendency and, within thirty (30) days of this Opinion & Order, submit a revised Notice along with a letter that (a) details descriptions of any objections and (b) proposes deadlines for scheduling mediation and exchanging mediation-related discovery.

SO ORDERED.

Dated: June 1, 2020
        New York, New York

Vernon S. Broderick
United States District Judge